# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALEXANDER HOPKINS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-860-BAJ-RLB** |
| **COMMISSIONER, SOCIAL SECURITY ADMINIRATION** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on November 7, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ALEXANDER HOPKINS**                                          **CIVIL ACTION**

**VERSUS**                                                     **NO. 22-860-BAJ-RLB**

**COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Alexander Hopkins ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g). (R. Doc. 1). Having found all the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…").

For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED,** and Plaintiff's appeal be **DISMISSED with prejudice.**

### I.   PROCEDURAL HISTORY

On July 6, 2020, Plaintiff filed his first application for disability benefits pursuant to Title XVI of the Social Security Act, alleging that he became disabled due to schizoaffective disorder, bipolar type. (Tr. 90, 92). Plaintiff's application for benefits pursuant to Title XVI was approved by the Social Security Administration (the "Administration") on July 22, 2020. (Tr. 90). The Administration found that Plaintiff has the following disabilities, which began on July 6, 2020: schizophrenic, paranoid, and other psychotic disorders, depression, bipolar, and related disorders. (Tr. 90). On August 3, 2020, the Administration denied Plaintiff's benefits due to excess resources. (Tr. 312-321).

On July 29, 2020, Plaintiff filed an application for disability insurance benefits pursuant to Title II and Title XVI of the Social Security Act. (Tr. 101, 129, 171). Plaintiff's application for benefits was initially denied by the Administration on July 23, 2020. (Tr. 129, 131).

On October 20, 2020, Plaintiff filed an application for reconsideration. (Tr. 184) On January 26, 2021, the Administration affirmed the original determination. (Tr. 133, 135, 187, 193).

Thereafter, Plaintiff filed a written request for hearing on February 4, 2021. (Tr. 198). An Administrative Law Judge ("ALJ") held a hearing on October 21, 2021, and February 3, 2022, (Tr. 31-89), after which he issued a partially favorable decision on March 7, 2022. (Tr. 8-22). In pertinent part, the ALJ denied Plaintiff's application for disabled adult child benefits and upheld the previous decision that Plaintiff was medically disabled pursuant to Title XVI. (Tr. 12). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 12, 2022. (Tr. 1-3). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether there is substantial evidence to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as less than a preponderance but "more than a mere scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan,* 895 F.2d at 1022. The Fifth Circuit has further held that substantial evidence "must do more than create a

suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary […] evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (internal quotations omitted). The Court may not reweigh the evidence or try the issues *de novo,* nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405 (g)). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III.  ALJ'S DETERMINATION

To qualify for benefits, the claimant must establish that he is disabled within the meaning of the Social Security Act ("SSA"). *Herron v. Bowen,* 788 F.2d 1127, 1131 (5th Cir.1986) (internal citations omitted). The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan,* 914 F.2d at 618.

The Commissioner (through an ALJ) applies a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the claimant must prove he or she is not currently engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b).

Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps, then the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff had not attained age twenty-two as of the date Plaintiff allegedly became disabled. 20 C.F.R. 404.102, 416, 120 (c)(4) an 404.350(a)(5).

2. Plaintiff has not engaged in SGA since the alleged onset date, July 1, 2003. 20 C.F.R. § 404.1571 *et seq.*, and 416.971 *et seq.*

3. Prior to October 12, 2023, when Plaintiff became twenty-two years old, Plaintiff did not have a medically determinable impairment or combination of impairments that significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for 20 consecutive months; therefore, Plaintiff did not have a severe impairment or combination of impairments. 20 C.F.R. § 404.1521 *et seq.* and 416.921 *et seq.*

4. Applying the doctrine of collateral estoppel, beginning on the established onset date, Plaintiff has had the following severe impairments: a schizoaffective disorder (bipolar type), an anxiety disorder, and an adjustment disorder with depressed mood. 20 C.F.R. 404.1520(c) and 416.920(c).

5. Since July 6, 2020, applying the doctrine of collateral estoppel, the severity of Plaintiff's impairments has met the criteria section 12.03 of 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. 404 1520 (d), 404.1525, 416.920(d) and 416.925.

6. Plaintiff was not disabled prior to July 6, 2020, (20 C.F.R. 404. 1520(c)) and 416.920(c), but applying the doctrine of collateral estoppel, became disabled on that date and has continued to be disabled through the date of this decision. 20 C.F.R. 416.920(d).

7. Plaintiff's substance use disorder is not a contributing factor material to the determination of disability as of July 2020. 20 C.F.R. 404.1535 and 416.935.

## IV. DISCUSSION

Plaintiff advances two arguments in support of his request to remand, which will be addressed within the framework of the five-step analysis. First, Plaintiff avers that the ALJ erred in finding that Plaintiff's impairments did not rise to the level of severe impairments before the age of twenty-two. (R. Doc. 11 at 6). In so arguing, Plaintiff asserts that the ALJ determination is not supported by substantial evidence because the ALJ dismissed "all the testimony of medical professionals, witnesses, and the Plaintiff, and by having no medical expert at the hearing." (R. Doc. 11 at 5). Second, the ALJ erroneously ascribed Plaintiff's behavior prior to the age of twenty-two to substance abuse. (R. Doc. 11 at 7). According to Plaintiff, the ALJ failed to properly apply SSR 16-3p, which requires the ALJ to determine if Plaintiff's mental conditions would be disabling in the absence of substance abuse. (R. Doc. 11 at 9).

### A. Substantial evidence supports the ALJ's determination that Plaintiff did not have any severe impairments prior to turning twenty-two years old on October 12, 2010.

In his first assignment of error, Plaintiff argues that the ALJ's step two analysis is not supported by substantial evidence. According to Plaintiff, the ALJ ignored all of Plaintiff's mental health records and, instead, substituted his own "medical conclusion" to reach the decision that Plaintiff did not have any severe impairments prior to him turning twenty-two years

old. (R. Doc. 11 at 7). Particularly, the ALJ "played doctor" by attributing "all of Plaintiff's aberrant mental behaviors prior to twenty-two to drugs." (R. Doc. 11 at 7). Additionally, the ALJ did not state the examination and laboratory findings or functional limitations that he considered when performing the "paragraph b" analysis. (R. Doc. 11 at 6). Instead, the ALJ cited only Plaintiff's activities of daily living. (R. Doc. 11 at 6). As a result, the ALJ erroneously found that Plaintiff did not have a medically determinable impairment or combination of impairments. (Tr. 15).

At step two of the sequential evaluation process, the Commissioner must determine whether Plaintiff's "impairment or combination of impairments" is severe. According to the regulations, if Plaintiff does "not have any impairment or combination of impairments which significantly limits" his "physical or mental ability to do basic work activities," the Commissioner "will find" Plaintiff does "not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. §§404.1520(c), 416.920(c).

Here, the ALJ found that Plaintiff did not have any "psychiatric diagnoses unrelated to substance abuse prior to December 2011." (Tr. 17). Accordingly, Plaintiff's "only possible medically determinable psychiatric disorder was a substance abuse disorder." (Tr. 17). The ALJ further stated that "even if [Plaintiff] had severe psychiatric impairments during the period at issue, he clearly had the mental functional ability to perform unskilled work." (Tr. 18).

Upon review of the Plaintiff's arguments and the ALJ's decision, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff did not have a medically determinable impairment or combination of impairments that significantly limited his ability to perform work-related activities prior to the age of twenty-two.

To start, the Court disagrees with Plaintiff's assertion that the ALJ ignored relevant evidence and substituted his own medical conclusion to reach his decision. The ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of" 20 C.F.R. 404.1529, 416.929, and SSR 16-3p. (Tr. 15).

To support his determination, the ALJ specifically cited the notes and opinions of, among others, Dr. Stephen Richmond, Dr. Christine Thome, and Dr. David Lewis. (*See* Tr. 16-19).

First, Plaintiff visited Dr. Richmond on April 25, 2008. (Tr. 569). During this visit, Dr. Richmond noted that Plaintiff withdrew from Tulane University because of his "mood disorder." (Tr. 569). Plaintiff stated that all he "did was go to bars." (Tr. 569). Dr. Richmond's notes that Plaintiff used multiple drugs, including, alcohol, nicotine, mushrooms, cocaine, meth[amphetamine], and heroin. (Tr. 569). Dr. Richmond's notes also indicate that Plaintiff was very social, had no trouble making friends, and had no social anxiety. (Tr. 571).

On July 8, 2011, Plaintiff told Dr. Richmond that he "smoked a lot [of pot] until" he was "16 or 17." (Tr. 567). He further stated that he began using psychedelics, including lysergic acid diethylamide ("LSD") and ecstasy, in high school. (Tr. 567).

On May 28, 2013, Dr. Richmond wrote that Plaintiff's "Bipolar Disorder **first manifested in December 2011**, in which he had classic Bipolar Type I symptoms of racing throughs, rapid speech, decreased need for sleep, as well as AH (spirits speaking to him)." (Tr. 574) (emphasis added). This is after the Plaintiff turned 22 years of age.

Second, Dr. Lewis testified at the first hearing on October 21, 2021. Dr. Lewis is an internal medicine physician that is also certified in electrocardiography. (Tr. 76). Dr. Lewis was

Plaintiff's next door neighbor from the age of fourteen to twenty or twenty-two. (Tr. 77). The bulk of Dr. Lewis' testimony pertained to his "informal" experience with Plaintiff as his next door neighbor, as Dr. Lewis' medical encounters with Plaintiff was unrelated to mental health. (*See* Tr. 2276-2314). During the hearing, Dr. Lewis stated that he recalled Plaintiff overdosing on drugs and being transported to Stanford Medical. (Tr. 78-79). He further stated that while he was "not a psychiatrist," he believed that Plaintiff was "bipolar and us[ed] drugs to sort of treat himself." (Tr. 80).

On August 14, 2020, Dr. Lewis wrote to Plaintiff's counsel that he "suspected that [Plaintiff's] drug use was self-medication for his psychiatric issues." (Tr. 1894). He further stated that Plaintiff was "very bright and his failure to achieve is psychiatric in nature." (Tr. 1894). Dr. Lewis, however, was not Plaintiff's psychiatrist during his adolescence, therefore, he "defer[ed] to [Plaintiff's] psychiatrist for his exact current diagnosis." (Tr. 1894).

Finally, Dr. Thome testified that she treated Plaintiff at Adolescent Counseling Services in Palo Alto from the age of 15-17. (Tr. 42). Plaintiff initially began seeing Dr. Thome due to his substance abuse issue. (Tr. 43). At the time, Plaintiff "was smoking marijuana and experimenting with other drugs." (Tr. 43). She further testified that Plaintiff would have periods of sobriety, during which he demonstrated "absolutely manic behavior and speech patterns." (Tr. 43). Particularly, Plaintiff spoke rapidly, shifted from subject to subject, and paced around the room. (Tr. 43). This behavior, however, only occurred when Plaintiff was abstaining from drugs. Dr. Thome testified that his behavior "suggested that he might be bipolar," but a diagnosis cannot be made until a patient has been sober from a certain period. (Tr. 43-44).

Considering the foregoing, the ALJ found Dr. Lewis and Dr. Thome's testimony to be unpersuasive. (Tr. 19). As the ALJ states, Dr. Lewis, admittedly, is not a psychiatrist, and he his

treatment of Plaintiff was unrelated to mental health. Therefore, the Court agrees that Dr. Lewis' opinion that "maybe [Plaintiff] was bipolar" is not persuasive. (Tr. 80). With respect to Dr. Thome, the Court agrees that her testimony and treatment of Plaintiff "fails to establish a medically determinable impairment or any mental work-related limitations." (Tr. 18). Particularly, Dr. Thome testified that she could not diagnose Plaintiff with a bipolar disorder because he never abstained from drug use for a substantial period of time. (Tr. 43-44).

Finally, the ALJ did not "disregard all the mental health records that occurred after the date of October 12, 2010, when the Plaintiff reached twenty-two." (R. Doc. 11 at 6). The ALJ explained that during Plaintiff's visit with Dr. Lewis on June 17, 2011, Plaintiff explained that during he had been clean and sober since May of 2011. (Tr. 1908). As a result of his sobriety, he was able to complete his course work for the semester and "pursued referral to a psychiatrist and a group counseling program to maintain his sobriety." (Tr. 1908). Additionally, as explained by Dr. Richmond, it was not until Plaintiff was twenty-three years old (well over a year after the adult disabled child cut-off date) that Plaintiff was diagnosed with Bipolar Type I. (*See* Tr. 574).

Accordingly, substantial evidence supports the ALJ's finding that during the relevant time period Plaintiff's only impairment was a substance abuse disorder.

The Court also finds that substantial evidence supports the ALJ's decision that even if Plaintiff had a mental impairment, it caused no more than mild limitations. To reach this determination, the ALJ considered the four broad areas of mental functioning. The four areas are known as the "paragraph B" criteria, which include: (1) understanding, remembering, or applying information; (2) interaction with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. After evaluating these categories, the ALJ

concluded that—based on the evaluations of physicians and Plaintiff's testimony—Plaintiff's medically determinable impairments were not severe.

Particularly, the ALJ explained that Plaintiff (1) was "able to understand, carry out, and remember simple instructions and tasks;" (2) was "able to use judgment; respond appropriately to supervisors, and usual work situations; and deal with changes in a routine work setting;" (3) "was able to complete high school with good grades and attend college prior to October 2010;" (4) did not have "severe difficulties in maintaining social functioning when [he] was not abusing substances;" (5) was able to perform "activities requiring interactions with others including working and obtaining illegal drugs;" and (6) did not exhibit "severe psychiatric symptoms, sever mood disturbance, or behavioral disturbance. (Tr. 17-18). Accordingly, Plaintiff's medically determinable mental impairment is not severe because it "caused no more than a 'mild' limitation in any of the functional areas." (Tr. 18).

Contrary to Plaintiff's argument, the ALJ considered more than Plaintiff's ability to perform daily activities. After reviewing Plaintiff's medical and mental health treatment records, the ALJ explained that the records indicated that Plaintiff exhibited "normal thought processes with no psychotic symptoms." (Tr. 17). Additionally, the records "did not note any severe problem involving [Plaintiff's] presentation or behavior during appointments with good rapport and affect." (Tr. 17). Nor did they "reflect severe psychiatric symptoms, severe mood disturbance, or behavior disturbance, during the relevant period at issue." (Tr. 17-18).

To the extent that Plaintiff is asking the Court to reweigh the evidence and hold that the evidence cited by Plaintiff outweighs the evidence cited by the ALJ, it is not the Court's role to reweigh the evidence or resolve conflicts. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based

on the evidence in the record. *Johnson v. Bowen,* 864 F.2d 340, 343 (5th Cir.1988); *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995). The Court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett,* 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson,* 864 F.2d at 343–44. If the ALJ's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405(g)).

Finally, Plaintiff's argument that the matter must be remanded for the ALJ's failure to call a medical expert to determine the onset of Plaintiff's disability is without merit. Social Security Ruling 18-01p states that an ALJ "may, but is not required to, call upon the services of a medical expert, to assist with inferring the date that the claimant first met the statutory definition of a disability." In other words, the decision to a call a medical expert is within the discretion of the ALJ. Accordingly, the ALJ did not err by failing to call a medical expert.

  **B.**  **The ALJ correctly found that Plaintiff's alcoholism and drug addiction was a contributing factor material to the determination of disability.**

Plaintiff's second assignment of error fares no better. Plaintiff argues that the ALJ inaccurately attributed his disorder to drug abuse. In so arguing, Plaintiff states that the ALJ failed to use "the proper legal standard for assessing drug abuse versus mental illness under SSR 13-2p." (R. Doc. 16 at 1). Particularly, Plaintiff asserts that "SSR 13-2p mandates that if a mental condition persists after drug and alcohol use is absent, so that it cannot be distinguished whether

abuse or mental illness caused the disability, the person should be declared disabled." (R. Doc. 11 at 7).[1]

The regulations provide that an individual is not eligible for benefits if either drug addiction or alcoholism ("DAA") is a contributing factor material to a determination of disability. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535. The key factor is whether Plaintiff would still be found disabled if he stopped using drugs or alcohol. *Id.* In making this determination, the ALJ evaluates which physical and mental limitations would remain if Plaintiff stopped using drugs or alcohol. *Vanacor v. Kijakazi*, No. CV 22-1325, 2023 WL 3939783, at *8 (E.D. La. Mar. 9, 2023). The ALJ also determines whether any or all of the remaining limitations would be disabling. *Id.* The claimant bears the burden of proof regarding the relevance of any DAA to his disability determination. *Id.*

20 C.F.R. § 404.1535 is applicable after the ALJ has made "a determination of disability." In other words, a finding of disability is a condition precedent to conducting a DAA analysis. Here, the ALJ found that Plaintiff did not have a disability prior to reaching the age of twenty-two. As stated above, the ALJ found that Plaintiff's "only possible medically determinable psychiatric disorder was a substance abuse disorder." (Tr. 17). Accordingly, there was no mental limitation that could have caused a disability. As such, the ALJ need not (and did not) conduct a DAA analysis for Plaintiff's adult child disability claim.

Even if Plaintiff did have a medically determinable impairment that rendered him disabled, Plaintiff did not abstain from drugs long enough during the relevant period to determine that any mental impairment would continue without drug use. *Vanacor v. Kijakazi,*

---

[1] Plaintiff also argues that it is not Plaintiff's burden to prove that the disability would remain if the substance abuse stopped. Instead, he asserts that it is the ALJ's burden to determine "whether the other impairment(s) would improve to the point of non-disability in the absence of drug addiction." (R. Doc. 11 at 9).

No. 22-1325, 2023 WL 3939783, *10 (E.D. La. March 9, 2023) ("Pursuant to SSR 13-2p, periods of abstinence may be considered evidence of whether DAA is material in cases involving co-occurring mental disorders, so long as the 'claimant is abstinent long enough to allow the acute effects of drugs or alcohol abuse to abate.'"). As stated above, Dr. Thome testified that Plaintiff had not been sober long enough to diagnosis him with a mental impairment. (Tr. 43-44).

Similarly, Plaintiff's argument that "the medical records which uphold a later diagnosis of mental illness" indicates Plaintiff's mental condition would have persisted if Plaintiff had been sober is not persuasive. (R. Doc. 11 at 7). Plaintiff's father testified that Plaintiff did not fully abstain from hard drug use until 2015 and from alcohol until 2018 or 2019—five and eight years, respectively, after Plaintiff attained the age of twenty-two. (Tr. 51). This period of sobriety is too far removed from the relevant time period to correlate it with Plaintiff's behavior prior to October 2010. For this reason, Plaintiff's second assignment of error is without merit.

## V.  CONCLUSION

It is the recommendation of the Magistrate Judge that the final decision of the Commissioner of Social Security be **AFFIRMED,** and Plaintiff's appeal be **DISMISSED with prejudice.**

Signed in Baton Rouge, Louisiana, on November 7, 2023.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**